UNITED STATES of America

v.

**Rocco Ernest INFELISE, Salvatore DeLaurentis, Robert Bellavia, and Harry Aleman.**

**Nos. 90 CR 87-1, 90 CR 87-3, 90 CR 87-4 and 90 CR 87-12.**

United States District Court, N.D. Illinois, E.D.

July 11, 1991.

David D. Buvinger and Mitchell Mars, Asst. U.S. Attys., Chicago, Ill., for plaintiff.

Allan A. Ackerman, Chicago, Ill., for Harry Aleman.

Patrick A. Tuite, Chicago, Ill., for Rocco Ernest Infelise.

Bruce Cutler, New York City, and Kevin Milner, Chicago, Ill., for Salvatore DeLaurentis.

Robert F. Simone, Philadelphia, Pa., for Robert Bellavia.

ON MOTION TO RECONSIDER

ANN C. WILLIAMS, District Judge.

Defendants Infelise, DeLaurentis, Bellavia and Aleman filed a motion requesting the court to reconsider its June 12, 1991 order, 765 F.Supp. 960, in which the court denied defendants' motion for release pending trial.

The court's Order dealt with a very narrow issue defined by the Seventh Circuit— "whether the use of anklets would satisfy the Bail Reform Act and thereby give these defendants a statutory entitlement to release pending trial." *United States v. Infelise, et al.*, 934 F.2d 103, 105 (7th Cir. 1991). In addressing that question, this court held that:

> The evidence presented on the operation and effectiveness of the electronic monitoring system available in this district was inconclusive at best. Furthermore, even if the system was foolproof, it alone would not be sufficient to protect witnesses and the community from these defendants. The electronic surveillance would have to be supplemented by house arrest, twenty-four hour a day phone monitoring, and twenty-four hour a day availability of law enforcement agents to respond to an electronic monitor violation. The government was not certain that such an enormous commitment of manpower could even be obtained for the next eight to nine months.

Memorandum Opinion and Order, 765 F.Supp. at 964.

In their motion for reconsideration, defendants do not dispute the court's finding that electronic anklets alone would not be sufficient to protect witnesses and the community from defendants and that the anklets would have to be supplemented by house arrest, phone monitoring, etc. Defendants only dispute the court's analysis of the feasibility of phone monitoring for defendants Infelise, DeLaurentis, Marino and Salerno.[1] As noted above, the court found that effective phone monitoring would require a tremendous amount of manpower and that it was uncertain that the government could obtain such an enormous commitment of manpower. Memorandum Opinion and Order, 765 F.Supp. at 963 and 964.

■ As a preliminary matter, defendants contend that the court is not allowed to assess the feasibility of the release conditions they suggest. Defendants seem to suggest that if there are any conditions which would negate defendants' dangerousness, then the court must release defendants pursuant to those conditions, whether the government actually has the resources to enforce or implement the conditions. The court disagrees. The Bail Reform Act requires the court to determine "whether there *are* conditions of release that will reasonably assure ... the safety of any other person and the community," not whether there would be certain conditions if the government had unlimited resources.

Furthermore, in its first opinion on defendants' pretrial release, which was summarily affirmed by the Seventh Circuit, this court took into account whether the government had sufficient manpower to "conduct effective surveillance of the defendants' homes and/or phone conversations" in determining whether various release conditions proposed by defendants would be sufficient to protect witnesses and the community. *See* Memorandum Opinion and Order, May 15, 1990 at 10, 1990 WL 77795. This court found that the

manpower necessary would be extraordinary, given the number of defendants involved and length of time before the case goes to trial. *Id.* The Seventh Circuit, in affirming this court's decision, has already implicitly agreed that it is proper to consider whether government resources are available to impose certain conditions of release when deciding whether there are any conditions of release which would adequately assure the safety of the community and the witnesses.

■ Defendants argue in the alternative that the government does in fact have sufficient resources to monitor their phones. Defendants contend that the mere installation of wire taps would be sufficient to prevent the defendants from using their phones to conduct the business of the enterprise and therefore the government would not even need to listen to their calls. The court is not persuaded by this argument. As the court stated in its June 7 order, "[a] voluntary phone tap serves no purpose unless someone listens to the calls." Memorandum Opinion and Order, 765 F.Supp. at 963. In short, defendants' promises that they will not use telephones to conduct the business of the enterprise alone are not sufficient to protect the community and witnesses.

Defendants next argue that if the government feels it must listen to their calls, the government can use some of the agents currently assigned to do spot checks on the defendants released pursuant to the court's May 15, 1990 order to listen to the calls. In support of this argument, defendants point to the fact that the government used nine agents to observe defendant Salerno during a fifteen hour period. Defendants contend that the government should use fewer agents per surveillance in order to free up agents to do other tasks. However, the government must use as many agents as necessary to effectively watch defendants. In the case the defendants point to, all nine agents were not watching defendant Salerno at the same time. *See*

---

1. In passing, the court notes that although it appreciates and applauds the need for vigorous advocacy, particularly in light of the issues presented here, the tone and language of defendants' brief was unnecessarily harsh.

Memorandum of Surveillance attached to Defendants' Motion to Reconsider. The agents worked in groups, with some working an earlier shift and some working a later shift. *Id.* If anything, the Salerno surveillance demonstrates the necessity of having several agents available to watch just one defendant. Thus, defendants have not persuaded the court that it should reconsider its finding that the government may not have sufficient resources to monitor all of defendants' calls twenty-four hours a day for the next several months.

Finally, even if the government could effectively monitor the phones of these four defendants, the court still has serious reservations about the effectiveness of the electronic ankle bracelets, which was the focus of the June 12 order. As the court stated in its June 12 opinion, the system has only been used a few times in this district, and the system has not been used for anyone accused of homicide. Moreover, the anklets cannot prevent a violation of a release order. At best, they let the government know if a defendant violated the conditions of his house arrest. Also, the system still requires agents to be available twenty-four hours a day to respond to such a violation. Given the uncertainty of the effectiveness of the ankle bracelets, as well as the uncertainty of the availability of government resources to impose the various conditions, the court finds that there is no condition or combination of conditions which can assure the safety of the community and witnesses. Therefore, defendants' motion for reconsideration is denied.